UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEARLA LYONS, | Civil Action No.: 18-cv-3123 |
| Plaintiff, | |
| – against – | **COMPLAINT** |
| CITY OF NEW YORK, P.O. MAKAIDA SEALY, SGT. LEVENSTEIN, SGT. SINGH, P.O. FIANDOLA, P.O. RAMOS, P.O. DU, and JOHN DOES 1-20, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Pearla Lyons, by her attorney, Mark A. Marino, PC, for her Complaint against Defendant City of New York, Defendant P.O. Makaida Sealy, Defendant Sgt. Levenstein, Defendant Sgt. Singh, Defendant P.O. Fiandola, Defendant P.O. Ramos, Defendant P.O. Du, and Defendant John Does 1-20, alleges, upon personal knowledge and upon information and belief:

## NATURE OF THE ACTION

1. On April 11, 2017, at approximately 5:00 pm, a police officer twisted Plaintiff Pearla Lyons' right elbow out of socket and caused numbness and permanent damage in Ms. Lyons' right arm, elbow, and hand, among other things, while handcuffing/arresting Ms. Lyons without probable cause. Three male police officers were either holding Plaintiff or just behind Plaintiff during the arrest. Ms. Lyons did not resist arrest the arrest, attempt to flee, or do anything to provoke aggressive police action. The facts and details of this paragraph are hereinafter referred to, collectively, as the "Incident."

2. Plaintiff brings claims against the individual defendants for various violations of her civil rights under federal law, as well as claims against all defendants pursuant to New York state law.

## PARTIES

3. Plaintiff Pearla Lyons ("Plaintiff") is, and was at the time of the incidents giving rise to this action, a resident of Kings County, State of New York.

4. The Incident occurred in Kings County, State of New York.

5. Defendant City of New York is, and was at the time of the incidents giving rise to this action, a municipal corporation duly organized under, and existing by virtue of, the laws of the State of New York.

6. Defendant P.O. Makaida Sealy is a police officer employed by the New York City Police Department (the "NYPD") – and thus, Defendant City of New York – with shield number 6726 and actual place of business at the NYPD's 67th Precinct at the time of the Incident ("Sealy").

7. Defendant Sgt. Levenstein is a sergeant employed by the NYPD – and thus, Defendant City of New York – with shield number 590 and actual place of business at the NYPD's 67th Precinct at the time of the Incident ("Levenstein").

8. Defendant Sgt. Singh is a sergeant employed by the NYPD – and thus, Defendant City of New York – with actual place of business at the NYPD's 67th Precinct at the time of the Incident ("Singh").

9. Defendant P.O. Fiandola is a police officer employed by the NYPD – and thus, Defendant City of New York – with shield number 11031 and actual place of business at the NYPD's 67th Precinct at the time of the Incident ("Fiandola").

10. Defendant P.O. Ramos is a police officer employed by the NYPD – and thus, Defendant City of New York – with actual place of business at the NYPD's 67th Precinct at the time of the Incident ("Ramos").

11. Defendant P.O. Du is a police officer employed by the NYPD – and thus, Defendant City of New York – with actual place of business at the NYPD's 67th Precinct at the time of the Incident ("Du").

12. Defendant John Does 1-20, upon information and belief, were, at the time of the Incident, employed by the NYPD – and thus Defendant City of New York – as police officers or other members of the service (the "John Doe Defendants").

13. Defendant Sealy, Defendant Levenstein, Defendant Singh, Defendant Fiandola, Defendant Ramos, Defendant Du, and the John Doe Defendants are referred to herein, collectively, as the "Individual Defendants."

14. Plaintiff has a video recording of the Incident and extracted color photographs of the Individual Defendants from the recording, which would presumably include, but not be limited to, Defendant Sealy, Defendant Levenstein, Defendant Singh, Defendant Fiandola, Defendant Ramos, and Defendant Du. Plaintiff will provide the photographs to the Office of Corporation Counsel, with all initiating papers, through her submission to Defendant City of New York. Upon information and belief, those John Doe Defendants (which may not be an exclusive list) may be described as follows:

   a. John Doe #1: white male, tall, medium build, bald, and standing by car door in Picture #1 to be turned over to Corporation Counsel;

   b. John Doe #2: white male, medium build, average height, dark hair, wearing sunglasses, and standing by NYPD vehicle in Picture #1 to be turned over to Corporation Counsel;

   c. John Doe #3: white male, medium build, average height, dark hair (bald on top), and light beard in Picture #2 to be turned over to Corporation Counsel;

    d.    John Doe #4: African-American or Hispanic female, short, medium build, dark hair, and short hair in Picture #2 to be turned over to Corporation Counsel;

    e.    John Doe #5: white male, medium build, average height, dark hair (bald on top), and light beard in Picture #3 to be turned over to Corporation Counsel;

    f.    John Doe #6: white or Asian male, medium build, average height, dark hair, and wearing eyeglasses in Picture #3 to be turned over to Corporation Counsel;

    g.    John Doe #7: white or Hispanic male, medium build, average height, dark hair, and over forty years old in Picture #4 to be turned over to Corporation Counsel;

    h.    John Doe #8: white male, medium build, average height, dark hair (bald on top), and light beard in Picture #4 to be turned over to Corporation Counsel;

    i.    John Doe #9: white or Asian male, medium build, average height, dark hair, and wearing eyeglasses in Picture #4 to be turned over to Corporation Counsel;

    j.    John Doe #10: white or Asian male (back to camera), medium build, average height, dark hair, and wearing eyeglasses in Picture #5 to be turned over to Corporation Counsel;

    k.    John Doe #11: African-American or Hispanic female (back to camera), short, medium build, dark hair, and short hair in Picture #5 to be turned over to Corporation Counsel;

  l. John Doe #12: white male (facing sideways), medium build, average height, dark hair (bald on top), and light beard in Picture #5 to be turned over to Corporation Counsel;

  m. John Doe #13: white or Hispanic male (facing the camera), large build, above-average height, completely bald, and dark beard in Picture #5 to be turned over to Corporation Counsel;

  n. John Doe #14: white or Hispanic male (facing the camera), medium build, average height, dark hair, and under forty years old in Picture #6 to be turned over to Corporation Counsel; and

  o. John Doe #15: white or Asian male, medium build, average height, dark hair, and wearing eyeglasses in Picture #6 to be turned over to Corporation Counsel.

15. After an initial (denied) request and subsequent (successful) appeal, the NYPD's Foil Unit provided paperwork indicating the names and other identifying information for Defendant Sealy, Defendant Levenstein, Defendant Singh, Defendant Fiandola, Defendant Ramos, and Defendant Du.

16. Plaintiff expects that the identity of all John Doe Defendants will be discovered during the course of this litigation.

17. At all relevant times, and during the time of the incidents giving rise to this action, the Individual Defendants were acting within the scope of employment.

18. At all relevant times, and during the time of the incidents giving rise to this action, the Individual Defendants were acting under color of state law.

19. The Individual Defendants and Defendant City of New York are referred to herein, collectively, as "Defendants."

## JURISDICTION AND VENUE

20. This Court has original jurisdiction over the instant action, pursuant to 28 U.S.C. §§ 1331 and 1343, as this is a civil action asserting claims under the federal civil rights laws.

21. This Court has supplemental jurisdiction over the claims asserted under New York state law, pursuant to 28 U.S.C. § 1367, as these claims are so related to Plaintiff's claims under the federal civil rights laws that they form part of the same case or controversy.

22. Venue is proper, pursuant to 28 U.S.C. § 1391, as the events and transactions giving rise to Plaintiff's claims occurred within this district.

## PROCEDURAL REQUIREMENTS REGARDING STATE CLAIMS

23. Plaintiff has complied with General Municipal Law Section 50 and all procedural requirements necessary to commence a lawsuit (for state claims) against Defendants.

24. This is an action for the injuries sustained by Plaintiff as a result of various civil rights violations under federal law, along with various violations of New York state law, perpetrated by Defendant City of New York and its employees, the Individual Defendants.

25. On July 6, 2017, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, or its agent(s), on behalf of Plaintiff.

26. On May 23, 2018, Plaintiff appeared for, and testified at, a hearing pursuant to General Municipal Law Section 50.

27. Defendant City of New York (and/or its agent(s)) has refused or neglected to make any adjustment or payment on Plaintiff's claims (as stated in Plaintiff's Notice of Claim).

28. Plaintiff commences this action within one year and ninety days of the date of accrual of the instant action.

## FACTUAL ALLEGATIONS

29. On April 11, 2017, at approximately 5:00 pm, Plaintiff went to Clarkson Avenue between 53rd Street and 54th Street in Kings County after being notified that her son was being arrested unjustly.

30. Plaintiff found her son sitting in the back seat of an NYPD vehicle, handcuffed, with the back door open and his feet on the street. A police officer, John Doe #1, was standing on one of Plaintiff's son's feet at some points in time, while another police officer, John Doe #2, stood nearby.

31. Plaintiff approached her son and told him to cooperate with the police officers. Others approached Plaintiff's son as well and spoke to him.

32. Plaintiff also spoke to the two police officers, John Doe #1 and John Doe #2, who informed Plaintiff that her son was handcuffed and detained because of an open "I-Card," which Plaintiff knew to be invalid.

33. John Doe #1 and John Doe #2 arrested Plaintiff's son without probable cause or other justification.

34. Upon information and belief, either John Doe #1 or John Doe #2 made a 10-85 call for back up. Approximately twenty officers and five police vehicles arrived shortly thereafter.

35. Of all the police officers arriving at the scene, Defendant Sealy was nearest to Plaintiff.

36. Plaintiff noticed that John Doe #1 was holding a mostly yellow device in his hand close to her already handcuffed and seated son. Plaintiff had never seen this type of device before and was concerned about it being used to injure her already handcuffed and seated son.

37. John Doe #1 was also holding a black device close to Plaintiff's already handcuffed and seated son.

38. Upon information and belief, John Doe #1 was holding a taser next to Plaintiff's son.

39. Plaintiff wanted to film her son's arrest on her phone, and she took out the phone and started to "unlock" it using the phone's keypad.

40. Defendant Sealy told Plaintiff to use her phone "over there" and nodded to a spot just a few feet away.

41. Plaintiff complied with Defendant Sealy's order to use her phone "over there" and took one or two steps back from the NYPD vehicle, with Defendant Sealy looking on.

42. Plaintiff heard her son scream in pain and looked up from her phone, finding her son standing by the NYPD vehicle with officers forcefully transferring him to another vehicle.

43. Upon information and belief, John Doe #1 used a taser on Plaintiff's son at least once.

44. Plaintiff took a step toward her son and protested the police officers' handling of her son – Plaintiff did not try to force her way toward her son – and Defendant Sealy violently shoved her without cause or provocation.

45. Plaintiff did not consent to being shoved by Defendant Sealy.

46. Several male NYPD officers, including John Doe #5, rushed Plaintiff and placed her against a brick wall on Clarkson Avenue between 53rd and 54th Street in Kings County.

47. Defendant Sealy grabbed Plaintiff's arms and ripped them behind her back with which such force that Plaintiff sustained a dislocated right elbow (the "Arrest").

48. Defendant Sealy used excessive force during the Arrest (in the process of handcuffing).

49. Plaintiff did not consent to the Arrest.

50. Plaintiff did not resist the Arrest or attempt to avoid handcuffing.

51. Defendant Sealy then dragged Plaintiff to a police vehicle with a noticeably dislocated elbow.

52. Defendant Sealy and other Individual Defendants took Plaintiff to the NYPD's 67th Precinct after the Arrest.

53. No police officer offered medical help to Plaintiff, who was obviously in pain.

54. No police officer read Plaintiff her Miranda rights at any time.

55. Certain of the Individual Defendants surrounded Plaintiff during the Arrest (in the process of handcuffing) in close proximity.

56. Certain of the Individual Defendants were in close proximity to Plaintiff after the Arrest (while Defendant Sealy dragged Plaintiff to a police vehicle).

57. Certain of the Individual Defendants were in position, and had adequate time, to stop Defendant Sealy from using excessive force (or assaulting and battering) Plaintiff during the Arrest (in the process of handcuffing) and after the Arrest (dragging Plaintiff to a police vehicle).

58. The Individual Defendants did not attempt to stop Defendant Sealy from arresting Plaintiff without probable cause or other justification.

59. The Individual Defendants did not attempt to stop Defendant Sealy from using excessive force (or assaulting and battering) Plaintiff during the Arrest (in the process of handcuffing) and after the Arrest (dragging Plaintiff to a police vehicle).

60. Certain of the Individual Defendants took Plaintiff to the 67th Precinct, instead of Kings County Hospital less than a mile away, knowing she had a dislocated elbow.

61. Certain of the Individual Defendants took Plaintiff to the 67th Precinct where she was criminally processed when she had a noticeably dislocated elbow.

62. Plaintiff repeatedly asked the Individual Defendants for medical aid for her noticeably dislocated elbow, but her pleas were verbally rejected/ignored.

63. EMTs from the New York City Fire Department (the "EMTs") eventually arrived at the 67th Precinct hours later to treat Plaintiff's injuries. Plaintiff was in a cell, still handcuffed and writhing in pain.

64. The EMTs took Plaintiff to Kings County Hospital Center, which is less than a mile from the precinct, where doctors immediately placed Plaintiff under general anesthesia and placed right elbow back into socket.

65. Plaintiff, who is right-handed, complained of pain in her right shoulder and elbow, as well as numbness in her right arm and hand, among other things, upon arrival at Kings County Hospital Center. She had surgery that day under sedation.

66. Plaintiff began receiving physical therapy and psychological/emotional counseling since the Arrest.

67. Plaintiff suffered the following injuries, among others, as a result of the Arrest and aftermath covered by the claims for relief: loss of liberty; physical injuries (including, but not limited to, neurological damage to right arm and back, dislocated right elbow, injury to right

shoulder, injury to back, and not yet known); psychological and emotional injuries; lost wages; and a loss of enjoyment of life.

68. The Office of Internal Affairs reviewed the facts surrounding the Incident – upon information and belief, in IAB Log No. 2017-13123 and IAB Complaint No. 2017-067-03496.

69. This action falls within one or more of the exemptions set forth in CPLR § 1602.

70. Plaintiff demands a trial by jury.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. 1983 – FALSE ARREST/SUPERVISORY LIABILITY
### As Against Defendant Sealy and the NYPD Supervisor(s) Approving the Arrest

71. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 70, inclusive, as though fully set forth herein.

72. Under the Fourth and Fourteenth Amendments of the Constitution of the United States of America and 42 U.S.C. 1983, Plaintiff has the right to be free from unreasonable and illegal searches and seizures, including false imprisonment and unlawful detention.

73. Defendant Sealy violated Plaintiff's rights when she intentionally confined Plaintiff, who was conscious at the time, without consent, justification, privilege, or probable cause.

74. The supervisor(s) approving the Arrest – upon information and belief, Defendant Levenstein – violated Plaintiff's rights when he intentionally sanctioned Plaintiff's confinement and is thus liable for supervisory liability.

75. Plaintiff suffered the following injuries, among others, as a result of the Arrest: loss of liberty, physical injuries (including, but not limited to, neurological damage to right arm and back, dislocated right elbow, injury to right shoulder, injury to back, and not yet known); psychological and emotional injuries; lost wages; and a loss of enjoyment of life.

76. Defendant Sealy took the aforementioned actions during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

77. Defendant Sealy was acting under color of state law at all times during the Incident giving rise to this action.

78. The supervisor(s) approving the Arrest – upon information and belief, Defendant Levenstein – took the aforementioned actions during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

79. The supervisor(s) approving the Arrest – upon information and belief, Defendant Levenstein – was acting under color of state law at all relevant times.

80. The actions taken by Defendant Sealy and the supervisor against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. 1983 – USE OF EXCESSIVE FORCE**
**As Against Defendant Sealy**

81. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 80, inclusive, as though fully set forth herein.

82. Under the Constitution of the United States of America and 42 U.S.C. 1983, Plaintiff has the right to be free from brutal conduct and the application of undue or excessive force by those acting under color of state law.

83. Defendant Sealy violated Plaintiff's constitutional rights by shoving Plaintiff before the Arrest without cause or provocation; using excessive force during the Arrest (including dislocating Plaintiff's right elbow, neurological damage to right arm and back,

dislocated right elbow, injury to right shoulder, injury to back, and not yet known); and after the Arrest (dragging Plaintiff to a police vehicle).

84. Plaintiff suffered the following injuries, among others, as a result of the Arrest: loss of liberty; physical injuries (including, but not limited to, neurological damage to right arm and back, dislocated right elbow, injury to right shoulder, injury to back, and not yet known); psychological and emotional injuries; lost wages; and a loss of enjoyment of life.

85. Defendant Sealy took the aforementioned actions during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

86. Defendant Sealy was acting under color of state law at all times during the incidents giving rise to this action.

87. The actions taken by Defendant Sealy against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. 1983 – FAILURE TO INTERVENE
### As Against the Individual Defendants

88. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 87, inclusive, as though fully set forth herein.

89. Under the Constitution of the United States of America and 42 U.S.C. 1983, police officers have an affirmative duty to protect the constitutional rights of citizens by intervening when other police officers commit constitutional violations in their presence.

90. The Individual Defendants violated Plaintiff's constitutional rights when, in their presence, Defendant Sealy used excessive force against (and assaulted and battered) Plaintiff, yet they did not intervene to protect Plaintiff.

91. The Individual Defendants violated Plaintiff's constitutional rights when, in their presence, Defendant Sealy falsely arrested Plaintiff.

92. The (in)actions taken by the Individual Defendants caused injuries to Plaintiff, including physical injuries, psychological injuries, emotional injuries, lost wages, loss of freedom, and past and future medical expenses, among other things.

93. The Individual Defendants took these (in)actions against Plaintiff during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

94. The Individual Defendants were acting under color of state law at all times during the incidents giving rise to this action.

95. The actions taken by the Individual Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. 1983 – DELIBERATE INDIFFERENCE
### As Against the Individual Defendants

96. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

97. Certain of the Individual Defendants violated Plaintiff's constitutional rights when he/she/they displayed a deliberate indifference to Plaintiff's medical needs in violation of the Eighth and Fourteenth Amendments of the Constitution and 42 U.S.C. 1983.

98. Certain of the Individual Defendants knew of and disregarded the excessive risk to Plaintiff's health or safety after the Arrest.

99. Certain of the Individual Defendants violated Plaintiff's constitutional rights when, in his/her/their presence, certain of the individual defendants displayed a deliberate

indifference to Plaintiff's medical needs in violation of the Eighth and Fourteenth Amendments of the Constitution and 42 U.S.C. 1983, yet did not intervene to protect Plaintiff.

100. Certain of the Individual Defendants violated Plaintiff's constitutional rights when they did not even offer Plaintiff medical services when they knew her arm was badly injured.

101. Certain of the Individual Defendants violated Plaintiff's constitutional rights when they did not provide Plaintiff medical services when they knew her arm was badly injured.

102. The (in)actions of the aforementioned Defendants caused injuries to Plaintiff, including physical injuries, psychological injuries, emotional injuries, loss of freedom, lost wages, and past and future medical expenses, among other things.

103. The aforementioned Defendants took the aforementioned (in)actions against Plaintiff during the course, and within the scope, of employment with Defendant City of New York.

104. The actions of the Individual Defendants caused injuries to Plaintiff, including physical injuries, psychological injuries, emotional injuries, lost wages, loss of freedom, and past and future medical expenses, among other things

105. The Individual Defendants took the aforementioned actions against Plaintiff during the course, and within the scope, of employment by the NYPD and the City of New York.

106. The aforementioned actions taken by the Individual Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### ASSAULT (UNDER NYS LAW)
**As Against Defendants**

107. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 106, inclusive, as though fully set forth herein.

108. On April 11, 2017, the Individual Defendants intentionally placed Plaintiff in apprehension of imminent harmful, offensive, and/or unwanted contact, without consent, justification, or privilege.

109. The actions of the Individual Defendants caused injuries to Plaintiff, including physical injuries, psychological injuries, emotional injuries, lost wages, loss of freedom, and past and future medical expenses, among other things

110. The Individual Defendants took the aforementioned actions against Plaintiff during the course, and within the scope, of employment by the NYPD and the City of New York.

111. The aforementioned actions taken by the Individual Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

112. Defendant City of New York is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiff during the course, and within the scope, of employment by Defendant City of New York under *respondeat superior*.

## SIXTH CLAIM FOR RELIEF
### BATTERY (UNDER NYS LAW)
**As Against Defendants**

113. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 112, inclusive, as though fully set forth herein.

114. Certain of the Individual Defendants intentionally initiated harmful, offensive, and unwanted physical contact with Plaintiff without consent, justification, or privilege, including shoving Plaintiff before the Arrest and twisting Plaintiff's right arm so hard during handcuffing that Plaintiff dislocating Plaintiff's right elbow, and dragging Plaintiff off by the elbow.

115. Plaintiff suffered the following injuries, among others, as a result of the Arrest: loss of liberty, physical injuries (including, but not limited to, neurological damage to right arm and back, dislocated right elbow, injury to right shoulder, injury to back, and not yet known); psychological and emotional injuries; lost wages; and a loss of enjoyment of life.

116. The Individual Defendants took the aforementioned actions during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

117. The Individual Defendants were acting under color of state law at all times during the incidents giving rise to this action.

118. The actions taken by the Individual Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

119. Defendant City of New York is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiff during the course, and within the

scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

**WHEREFORE**, Plaintiff Pearla Lyons respectfully requests that this Court enter Judgment against Defendants as follows:

a. compensatory and punitive damages as against Defendants, jointly and severally, in a combined amount to be determined at trial, but not less than five hundred thousand dollars ($500,000.00);

b. attorney's fees incurred during this action, pursuant to 42 U.S.C. 1988(b), the determination of which lies within the sound discretion of this Court;

c. costs incurred during this action, pursuant to 42 U.S.C. 1988(b), the determination of which lies within the sound discretion of this Court;

d. expert fees incurred during this action, pursuant to 42 U.S.C. 1988(c), the determination of which lies within the sound discretion of this Court;

e. all statutory interest on any sums awarded to Plaintiff; and

f. such other and further relief as the Court deems proper and fair.

Dated: New York, New York
May 29, 2018

Respectfully yours,

MARK A. MARINO, PC

    s/ Mark A. Marino_____
Mark A. Marino
*Attorney for Plaintiff Pearla Lyons*
380 Lexington Avenue, 17th Floor
New York, New York 10168
Tel:  212.748.9552
Fax:  646.219.5350